DELTA TABLE & CHAIR CO. *v*. YAZOO & MISSISSIPPI VALLEY RAILROAD CO.

[63 South. 272.]

1. CARRIERS. *Delay in delivery. Damages. Lost profits.*

Where samples are shipped for exhibition at a fair or show, and on account of delay of transportation they do not arrive in time for exhibition, recovery of anticipated profits and increase of custom may be had, if the carrier, at the time the shipment was made, had notice of the purpose for which it was made.

2. DAMAGES. *Delays in delivery. Lost profits.*

The rule that damages which are uncertain or contingent cannot be recovered does not apply to an uncertainty as to the value of the benefit or gain to be derived from performance, but to an uncertainty or contingency as to whether any such gain or benefit would be derived at all.

APPEAL from the circuit court of Yazoo county.

HON. W. A. HENRY, Judge.

Suit by the Delta Table & Chair Company against the Yazoo & Mississippi Valley Railroad Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*E. L. Brown* and *Campbell & Campbell,* for appellant.

It has long been settled that profits may be recovered, as the measure of damages for the simple breach of a contract, if such profits were within the contemplation of the parties at the time the contract was made, and the loss thereof was the result of the breach. *Railroad Co.* v. *Ragsdale,* 46 Miss. 458; *Express Co.* v. *Jennings,* 86 Miss. 338.

The anticipated profits of an established business, sawmilling, may be recovered, upon a simple breach of contract to deliver logs. *Leatherberry* v. *White,* 82 Miss. 103.

Damages to cattle being fed for market, due to delay in the transportation of feed for them, the railroad company having been given, at the time of the shipment, notice that such damages would ensue, are recoverable. *Railroad Company* v. *Jones,* 87 Miss. 489.

When the books speak of profits, as not recoverable because speculative and uncertain, they have reference to the question of whether the loss of profits was the result of the breach, and not whether the amount of the damages was certain. It is only necessary that the "nature and cause" of the damage be certain. *Railroad Co.* v. *Hubbard,* 85 Miss. 480, 8 Enc. of Law (2 Ed.), 614.

Evidence of past profits of a business is admissible, as is evidence of the nature and magnitude of the business, whether there be entire loss of the business, or merely an impairment, though such evidence is not the strict measure of recovery. 8 Am. & Eng. Enc. of Law (2 Ed.), 626.

In case of delay in the shipment of drummer's samples until after the season for which they were suitable, profits from probable sales therefrom are recoverable, if notice of the purpose for which the goods were intended was given the carrier at the time the contract was made. 8 Enc. of Law (2 Ed.), 594, note 4.

Where samples are shipped for exhibition at a fair or show, and, on account of delay in transportation, they do not arrive in time for exhibition, recovery of anticipated profits and increase of custom may be had, if the carrier, at the time the shipment was made, had notice of the purpose for which it was made. This proposition is announced as an illustration of the principle, cited above that it is not uncertainty as to the amount, but uncertainty as to whether damage resulted from the breach, which forms the basis of a denial of the recovery of profits as an element of damages. 8 Enc. of Law (2 Ed.), 616 and 615, note 5.

The agent of defendants, at the time the shipment was made, was advised of the purpose thereof; he, therefore, then contemplated, as did the plaintiff, that loss of sales and the profits thereon would ensue, if the shipment was not made with reasonable dispatch; the goods were in transit nineteen days, being from eleven to fourteen days longer than the time reasonably required for the transit; the plaintiff did not receive the goods until the market was about over, and then made sales of twenty-three hundred dollars, as compared with sales of fifteen thousand dollars, on the same market in July before; the bill of lading stipulated for a delivery within a reasonable time; the plaintiff was damaged twenty-five per cent of the sales it could have made, which its manager believes would have amounted to twenty thousand dollars; there was no chance for the plaintiff to make sales to keep its mill going, after that market closed; and it must recover, unless we go back to the antiquated and oft-repudiated notion that loss of profits do not afford ground for a recovery of damages, occasioned by breach of contract.

*Mayes & Mayes,* for appellee.

Let us first consider the question of whether or not the trial court acted properly in refusing to allow the jury to award the appellant damages to compensate it for its alleged lost profits.

We think this action of the trial court was unquestionably correct. And we think that it was correct for two reasons: First, because the lost profits which the appellant is here seeking to recover, are so remote, uncertain and speculative that they cannot form the basis for a judgment; second, because, at the time this contract of carriage was made, the appellees were not told, and they did not know, that the loss of profits, which were special damages, would result from a breach of the contract.

Now, let us discuss the first one of the above two reasons why the action of the trial court in refusing to allow the jury to award damages for these alleged lost profits was correct.

As we have already said, damages for these alleged lost profits cannot be awarded, because these damages, if they existed at all, were too remote, too uncertain, and too speculative.

In awarding damages, the courts have for their aim the allowance of just compensation for the injuries sustained. But it is well settled that these injuries must be shown by reliable facts, and they cannot be shown by vague theories, because the courts will not dip into the realm of speculation. 116 Tenn. 624; 78 Ala. 243; 67 Md. 503; 84 Ins. 347; 61 Mo. 534; 26 Ill. App. 580; 9 Ex. 341; 77 Ala. 148; 64 Miss. 458.

In support of its contentions that these alleged lost profits can be recovered, appellant cites and relies upon the case of *White* v. *Leatherberry,* 82 Miss. 103. But the case cited does not at all support appellant's contention. There are several marked differences between the Leatherberry case and the case at bar.

The first one of those differences is that in the Leatherberry case the plaintiff's ability to sell his lumber was never denied. In that case plaintiff was not dependent upon a limited market, nor did he have to sell within any limited time.

In the Leatherberry case it was made plain that if the plaintiff could not sell his lumber at one time or place, he could hold it and sell it at another time, and place. It was perfectly manifest that sooner or later plaintiff could have sold his lumber; and, therefore, the court was justified in assuming that at some time, and at some place, that plaintiff would have reaped a profit.

The second marked difference between the Leatherberry case and the case at bar, is that in the Leatherberry case the plaintiff has an established business, when, in the case at bar the plaintiff has no established business.

Appellant also cites a case of *Railroad Company, et al. v. Jones,* 87 Miss. 489, in support of its contention that lost profits can be recovered. But an examination of that case shows that it has no bearing whatever on the question of whether or not lost profits can be recovered.

Williams' statement of what he told the freight agent looks strong in print, that is, it does so at first blush; but when you boil it down, and put yourself in the freight agent's place, you see that there is really nothing to it.

It is a well-settled and thoroughly understood rule of law that it is not sufficient for a shipper who seeks to recover special damages in the way of lost profits on account of a delayage shipment of freight, to show that the carrier was aware of the general circumstances surrounding the shipment, but the shipper must show that the carrier was advised of the fact that loss of profit would result from a delay. 116 Tenn. 624. And appellees, in the case at bar, were never so advised.

Appellant in its brief, lays great stress upon the fact that Williams repeatedly told appellee's tracing clerk and

their claim agent, and their commercial agent at Chicago, of the importance of this shipment. As to this, we wish to remind the court that this information was given the employees only after the contract of carriage was entered into, and that therefore it profited appellant nothing. Appellant must stand or fall on what it told the agent at Yazoo City at the time the contract was entered into. See 116 Tenn. 624.

We feel confident that after you have examined the record, you will say that the action of the trial court in refusing to allow the jury to award damages for these alleged lost profits was absolutely correct.

COOK, J., delivered the opinion of the court.

Appellant, a manufacturer of solid oak tables, delivered to the freight agency of the Yazoo & Mississippi Valley Railroad Company, at Yazoo City, certain sample tables to be carried to the city of Chicago. At the time of the delivery appellant's representative explained to the agent of the railway company that the tables were shipped as "samples," to be exhibited at a "market" established in Chicago by the manufacturers of the country; that dealers in furniture throughout the country patronized the "market," which was held twice a year, and for a limited time, and unless the "samples" were delivered on a day named appellant would suffer great loss, for the reason that, if his tables were not exhibited at the exposition, appellant would lose the opportunity of selling its output.

The agent of the railroad company assured appellant's representative that the tables could and would be delivered at Chicago well within the time limit and that he was fully aware of the necessity for prompt delivery. The samples were not delivered within the time, but did reach Chicago, and were placed in the "market" in the closing days thereof. It appears that appellant had exhibited its product in this "market" once before, and by

reason of the fact that other manufacturers exhibited veneered, but not solid, oak tables, appellant had been enabled by the superiority of their product to successfully compete with others, and did sell a large part of its wares.  This action was for prospective profits which the negligence of the carrier prevented appellant from making.  At the close of the evidence the trial court directed a verdict for the defendant.

In cases of delay in the shipment of drummers' samples until after the season for which they were suitable, profits from probable sales therefrom are recoverable, if notice of the purpose for which the goods were intended was given the carrier at the time the contract for carriage was made.  8 Enc. Law (2 Ed.), page 594, note 4.  Where samples are shipped for exhibition at a fair or show, and on account of delay or transportation they do not arrive in time for exhibition, recovery of anticipated profits and increase of custom may be had, if the carrier, at the time the shipment was made, had notice of the purpose for which it was made.  Enc. of Law, 615, 616, note 5.  All of this is familiar learning to the courts of this state, and the doctrine has been frequently announced and approved by this court.

When the books speak of profits as not recoverable because speculative and uncertain, they have reference to the question of whether the loss of profits was the result of the breach, and not whether the amount of the damages were certain.  *Railroad Co.* v. *Hubbard,* 85 Miss. 480, 37 South. 1011; *Railroad Co.* v. *Jones,* 87 Miss. 489, 39 South. 493; *White* v. *Leatherberry,* 82 Miss. 103, 34 South. 358.  The principle here involved was discussed and approved by this court in the recent case of *Beach* v. *Johnson,* 59 South. 800.

There is no doubt from this record that the carrier was negligent, and that at the time the contract was made the carrier was fully advised of the probable consequences of its negligence.  Taking the evidence for the

plaintiff, it is clear that it was damaged by the negligence of the carrier, and the evidence afforded a reasonable basis for the ascertainment of the amount of special damages. The jury, from the evidence submitted to them, should have been authorized to pass on the claim of lost profits. The court was in error in confining plaintiff's recovery to the value of the tables not delivered.

*Reversed and remanded.*