297 So.2d 894 (1974)
CONSOLIDATED AMERICAN LIFE INSURANCE COMPANY
v.
John V. COVINGTON et ux.
No. 47599.
Supreme Court of Mississippi.
July 29, 1974.
*895 Heidelberg, Woodliff & Franks, Sam E. Scott, Timothy R. Smith, Jackson, for appellant.
Edward L. Cates, Jackson, for appellees.
RODGERS, Presiding Justice.
This is a controversy growing out of an alleged breach of a contract for which the appellees sought and obtained a judgment in the Circuit Court of Hinds County, Mississippi, against the appellant for ensuing damages. The dispute arose under the following circumstances. Mr. John V. Covington and his wife, Mary Jo Covington [hereinafter called Covingtons] were desirous of obtaining a loan. They made application to the Consolidated American Life Insurance Company, a Mississippi insurance company [hereinafter called Insurance Company], for a loan of one hundred fifteen thousand dollars ($115,000.00) to be repaid over a period of twenty (20) years. The Insurance Company agreed to make the loan, and pursuant thereto issued its commitment to make the loan for a period of twenty (20) years at seven and one-fourth percent (7 1/4%) and to take a mortgage upon certain property located on Highway 80 West. The Jefferson Standard Life Insurance Company held a first mortgage on the property for seventy-six thousand three hundred twelve dollars and sixty-eight cents ($76,312.68). A copy of the commitment is hereto attached. It was duly accepted by Mr. and Mrs. Covington on November 1, 1968, with the understanding that the matter would be closed on November 10, 1969, about one (1) year later. Mr. and Mrs. Covington were to sign the note and Mrs. Covington's stepfather, Mr. H.L. Pickering, was to endorse the note. The note had several essential requirements necessary to be performed before the loan could be closed. The note required that the Covingtons obtain and submit an engineer's survey and certificate acceptable to the Insurance Company. They were required to obtain and submit a title insurance policy in the full amount of the loan in a company acceptable to the Insurance Company. They were required to submit a premium paid fire and extended coverage insurance policy for the full amount of the loan. They were required to sign the note and deed of trust made on company forms, and to sign an assignment of rents on a company form. They were required to obtain the endorsement of the note by H.L. Pickering. The closing of the loan was to be accomplished by and approved by the attorneys of the Insurance Company. It was also understood that a life insurance policy would be written on the life of Mr. Covington by the Consolidated American Life Insurance Company in the adjusted sum of fifty thousand dollars ($50,000.00).
It was admitted throughout the trial and is admitted on appeal that the loan commitment was made as shown by the commitment contract. The Insurance Company contends, however, that it is not at fault and is not liable to Mr. and Mrs. Covington because they did not meet the requirements necessary to close the loan. They point out here that the testimony offered before the trial court shows that the vice president of appellant Insurance Company, Mr. R.C. Stockett, wrote a letter dated December 2, 1969, extending the loan closing time from November 10, 1969, to December 1, 1970. which was said to be against the wishes of the Covingtons. The Insurance Company contends that the Covingtons did not offer to perform any of *896 the "conditions" listed in the commitment. Moreover, it is said that Mr. H.L. Pickering died in February, 1970, and, therefore, it was impossible for the Covingtons to meet the requirements that he sign the note.
The Covingtons answered the contention of the Insurance Company by offering testimony to show that they met some of the conditions and were in the process of meeting all of the requirements, including the signing of the note by Mr. H.L. Pickering, but that various necessary note, trust deed, and rent assignment forms were not presented to the Covingtons so that they could sign them. Moreover, the Covingtons offered testimony to show that the Insurance Company advised the Covingtons that it could not carry out its commitment because it did not have the necessary funds, and that appellees did not agree to an extension of the commitment. This testimony was controverted by the Insurance Company, and it continued to insist that the reason the loan was not made was because the "conditions precedent" were not met by the Covingtons. The Insurance Company offered evidence to show that it had sufficient available funds to make the loan and had available sources from which it could borrow additional funds.
Without making a study to determine whether or not the requirements set out in the loan commitment contract were in fact "conditions precedent" or simply a part of the contract, we move directly to the heart of the issue, that is to say, was the Insurance Company unable to carry out its contract because the Covingtons failed to meet the requirements of the contract, or did it refuse to carry out its contract because it did not have the necessary funds at the time or for reasons of its own. If the Insurance Company refused to make the loan in compliance with its contract for reasons of its own, which were not a part of the contract, it in effect excused and prevented the Covingtons from performing the necessary conditions required of them in the contract.
It has been said by this Court that where the performance of a contract is prevented by either party, the other who is willing to perform is entitled to damages from the other sufficient to compensate him for the loss. Beach v. Johnson, 102 Miss. 419, 59 So. 800 (1912); 17A C.J.S. Contracts § 456, at 579 (1963).
The issue as to which party breached the contract was fairly submitted to the jury. The verdict of the jury in favor of the Covingtons settled this issue since there was ample testimony in the record to sustain the jury verdict. Hall Engineering & Construction Co. v. Jones, 186 So.2d 773 (Miss. 1966). We hold that the trial court was not in error in failing to direct a verdict in favor of the Insurance Company. The verdict was not against the overwhelming weight of the evidence. Pitts v. Mississippi Power & Light Co., 177 Miss. 288, 170 So. 817 (1936).
The jury returned a verdict in favor of the Covingtons in the sum of twenty-two thousand dollars ($22,000.00). On motion of the Insurance Company to direct a verdict for it  as to liability or in the alternative to grant a new trial as to the amount of damages  the court overruled the motion for a new trial, and sustained the motion as to damages, requiring a remittitur of damages down to eight thousand two hundred eighty-eight dollars and seven cents ($8,288.07). The Insurance Company has appealed as to the issue of liability and the Covingtons have appealed the order requiring a remittitur. They insist that the jury verdict for the full amount should be reinstated by this Court.
The Insurance Company contends that only nominal damages are allowable under the facts in this case. They cite 22 Am.Jur.2d Damages § 55, at 85-86 (1965), wherein it is said: "Thus, it has been said that a party to a contract who is injured by another's breach of that contract is entitled to recover from the defaulting party damages for only such injuries as are the *897 direct, natural, and proximate results of the breach."
The Covingtons agree that this is the rule, but say that they alleged and proved actual damages by showing that as a result of the failure of the Insurance Company to honor its commitment, they were forced to borrow at a higher rate of interest, to pay attorneys' fees to prosecute the loan; that they had a loss of discount advantages, and were required to pay life insurance premiums. Moreover, they contend that it was not necessary for them to establish the exact amount of their loss. They cite Mississippi Power & Light Co. v. Pitts, 181 Miss. 344, 179 So. 363 (1938), which quotes Montgomery Ward & Co. v. Hutchinson, 173 Miss. 701, 708, 159 So. 862, 863 (1935), as follows:
"`A party who has broken his contract cannot escape liability because of the difficulty in finding a perfect measure of damages. It is enough that the evidence furnishes sufficient data for an approximate estimate of the amount of the damages. * * * When a verdict is sustained by the reasonable probabilities growing out of the evidence, the judgment is not to be defeated by showing that there is this or that or other possibility which would point to a contrary verdict.'" 181 Miss. at 361-362, 179 So. at 366.
The record shows that the Covingtons did, at a later date, borrow money on the property sought to be pledged to the Insurance Company, but that they had to pay ten percent (10%) interest instead of the seven and one-fourth percent (7 1/4%) agreed to by the Insurance Company. They had to keep in force other loans and borrow from another bank. We find no error as to the ruling of the court on the plaintiffs/appellees' instructions to the jury. The failure of the court to have permitted the introduction of a letter dated August 28, 1970, from the attorneys of the Insurance Company admitting that the Insurance Company officials said that the company did not have sufficient funds in November, 1969, to meet other commitments, if error, is a moot issue since the jury returned a verdict in favor of the Covingtons as to the liability of the Insurance Company, without the benefit of the admission.
We are of the opinion, however, that the testimony introduced by appellees as to other transactions requiring the borrowing of money for the purpose of "floor planning" and the loss of an automobile line of credit was not admissible to show damages growing out of the failure of the Insurance Company to carry out its loan commitment, because special damages which were not contemplated at the time the contract was made were not recoverable, unless it was shown that the Insurance Company had knowledge of such special damages. Since there is no contention that the Insurance Company was aware of such special damages, the testimony is not admissible. Vicksburg & Meridian R.R. v. Ragsdale, 46 Miss. 458 (1872).
We have examined the instructions complained of by the Insurance Company, wherein it requested the trial judge to limit the damages to nominal damages or to expenses known to the Insurance Company, and we are of the opinion that the trial judge acted properly in refusing to grant the requested instructions for the following reasons.
The general rule of damages for the breach of contract is expressed in 5 A. Corbin, Contracts § 1078, at 446 (1964), as follows:
"If one who has contracted to lend money to another commits a breach, of course the latter has a right of action. His injury, however, may be merely nominal. This would be the case if the loan was to be at the market rate of interest and upon breach the borrower secured money of another lender at the same rate and without any extra expense. Frequently a higher rate must be paid and there are additional expenses incurred. When such is the case, damages *898 are awarded to the extent of the injury thus shown.
There are cases in which the disappointed borrower has been unable to borrow money elsewhere because his own credit is not sufficiently good or because of lack of money to be had. In some instances the court has disregarded these facts and has refused to award damages for injury consequent upon the failure to procure money."
The rule is that only nominal damages may be recovered for the breach of a contract to lend money where money may be procured elsewhere under the same conditions as to time and interest. Damages may be small or large according to the circumstances. The measure of the damages is the resulting loss sustained by the borrower through the breach of the contract. If a borrower could readily obtain a loan on the same terms, the damage would be nominal. If he were required to pay a higher rate of interest, or the note covered a shorter term, or other oppressive terms, the damage recoverable would be greater. 36 A.L.R. 1408 (1925); Restatement of Contracts § 343 (1932).
In order to recover damages for special circumstances over and above the actual loss in interest and cost, the special circumstances must have been within the contemplation of the parties at the time when the contract was made, or brought to the attention of the injured party before the loss occurred. 22 Am.Jur.2d Damages §§ 68-69 (1965).
The plaintiffs/appellees offered proof to show that they were required to pay a higher rate of interest, attorneys' fees to prosecute the loan, expenses due to loss of discount advantages, life insurance premiums, telephone bills, and travel expenses. They now argue that all of this was actual damages; but can it be said that all was in contemplation of the parties at the time the contract was made, or brought to the attention of the Insurance Company before the loss occurred? We think not. There was obviously no contemplation or knowledge of the parties that a breach of the contract would lead to discount advantages to the plaintiffs/appellees.
The trial judge sustained a motion for a new trial on damages alone, with the proviso that if the Covingtons would agree to accept a remittitur reducing the verdict of the jury to eight thousand two hundred eighty-eight dollars and seven cents ($8,288.07), he would sustain the jury verdict. This sum was calculated by the court to be the additional interest they were required to pay by reason of the breach of contract and attorneys' fee required to secure a new loan.
Taking the entire record as a whole, and after having examined the authorities cited in the briefs, we are of the opinion that the trial judge acted properly in reducing the verdict of the jury to the sum of eight thousand two hundred eighty-eight dollars and seven cents ($8,288.07). The judgment of the trial court for the above mentioned sum will be affirmed on direct and cross-appeal, and the cost of appeal will be equally divided between the parties.
Judgment of the trial court is affirmed as to liability and damages.
Affirmed.
PATTERSON, INZER, SUGG and WALKER, JJ., concur.

See Appendix on next page.

*899 APPENDIX

 CONSOLIDATED AMERICAN LIFE
 308 N. WEST STREET
 P.O. Box 59 Jackson, Mississippi 39205
 Telephone 352-5551
 October 23, 1968
Mr. John V. Covington
Mrs. Mary Jo Covington
5328 Saratuga Drive
Jackson, Mississippi
 Re: Loan Application Mr. & Mrs. John V.
 Covington
 Consolidated American Life Insurance
 Company
 Loan Commitment No. 328
Dear Mr. and Mrs. Covington:
 Your application for a mortgage loan has been approved by the
Finance Committee of Consolidated American Life Insurance Company
in the amount of $115,000.00 , bearing 7 1/4 per cent interest for
a period of 20 years with monthly installments of $ 909.92 . To
this monthly payment, must be added a pro rata share of annual
ad valorem taxes and fire insurance premiums and such payments
are due on the first day of each and every month over the life of
the loan.
 This commitment is subject to the following requirements which
are marked and the loan is to be closed when they have been
satisfied.
____ 1. Occupancy by you as owner.
 x 2. Engineer's survey and certificate acceptable to
 Company.
 x 3. A Mortgagee's Title Insurance Policy in the full
 amount of the loan with a company approved by us. Any
 exceptions in the title binder or policy must also be
 acceptable to us.
 x 4. Negotiable promissory note and first deed of
 trust on Company forms. The privilege of prepayment is
 granted during the first five years of the loan
 provided borrowers pay a 3% premium on the unpaid
 balance at the time of payment in full. After five
 years have expired, prepayment is unlimited provided
 60 days written notice is given to this Company. If
 said notice is not given, a 3% premium shall apply.
 x 5. Fire and extended coverage insurance policy
 with a mortgage clause to the Company in the amount
 of the loan with a receipt showing payment of the
 first year's premium.
 x 6. An appraisal in at least the amount of
 33 1/3% more than the amount of the loan by an
 appraiser whose qualifications are accepted by the
 Company.
____ 7. A current termite inspection report.
____ 8. A certificate by the supervising architect that
 construction has been completed in accordance with
 plans and specifications submitted.
*900 x 9. A conditional assignment of rents on Company
 forms.
 x 10. This loan to be closed November 10, 1969.
 [*] 11. Other special requirements attached to this letter
 as Exhibit A.
 The satisfaction of the requirements of this commitment letter
and the closing of the loan are subject to the approval of our
attorneys, Heidelberg, Woodliff & Franks, 690 First National Bank
Building, Jackson, Mississippi. When the loan is ready to be
closed, please contact our attorneys for instructions pertaining
to closing. As is customary, you will pay all closing costs.
[*] Ex. A.  Personal endorsement by Mr. H.L. Pickering.
 This commitment expires 15 days from this date unless accepted
by your signing and returning the enclosed copy of this
commitment within the 15 day period.
 Yours very truly,
 CONSOLIDATED AMERICAN LIFE
 INSURANCE COMPANY
 By: /s/ R.C. Stockett 
 R.C. Stockett, Vice President
cc: Heidelberg, Woodliff & Franks
 Attorneys
 ACCEPTED this 1 day of November , 1968.
 /s/ John V. Covington 
 /s/ Mary Jo Covington