¶ 1. On May 28, 1992, Wayne Courtney filed an action for breach of contract against Roy Glenn and the Powers Waterworks Association (Powers). The matter came to trial in December 1998. The trial court granted directed verdicts for both defendants. Feeling aggrieved, Courtney perfected this appeal and raises the following issues taken verbatim from his brief: 1) the lower court erred in granting Roy Glenn's motion for a directed verdict, and 2) the trial judge erred in granting the directed verdict in favor of Powers Waterworks Association.
 FACTS
¶ 2. Powers is the rural water association for Jones County. In the late 1980s, the expansion of U.S. Hwy 84 east of Laurel, Mississippi required the re-routing of a portion of the water system of Powers. Roy Glenn d/b/a the Glenn Company, an engineering firm, was hired by Powers to design and prepare specifications for the new water system and to supervise and inspect all work during construction. Powers then let bids based upon Glenn's specifications.
¶ 3. Courtney submitted a $144,461.14 bid for rerouting the water system and was awarded the contract for a portion of that work. He began work on the project in July 1989 with a projected completion date of December 15, 1989. Under the terms of the contract, Courtney was *Page 164 
required to submit pay requests by the twenty-fifth of each month on Farmers Home Administration forms. While Powers provided the necessary Farmers Home Administration forms, Courtney submitted his pay requests on scraps of paper which Glenn in turn used to complete the required form. Neither Courtney nor Glenn retained copies of the original scraps of paper.
¶ 4. During the course of the contract, three written changes and an amendment were made which required Courtney to perform additional work. Powers paid Courtney based on the pay requests as required by the terms of the contract. On March 14, 1990, Powers certified the completion of the contract and final payment by requiring Courtney to sign an acknowledgment that he had received full and final payment according to the terms of the contract. According to the contract, Powers could withhold up to 10% of the final payment as retainage for any outstanding debt owed by Courtney. Powers withheld $21,816. After all outstanding debts were paid, the remainder would then be forwarded to Courtney.
¶ 5. From this retainage, Powers paid $1,106 to the Mississippi Highway Department for repairs to Highway 84 for damage caused by Courtney, $3,538.45 to Wansley Machine and Welding for Courtney's equipment repairs, $1,467.40 for clean up work Courtney failed to complete, $1,564.33 paid to other contractors to repair leaks in the water system constructed by Courtney, and $731.35 to repay a loan from Powers to Courtney. The balance, $13,670.83, was deposited with the circuit court after Powers received a writ of garnishment issued by the Mississippi State Tax Commission for back sales taxes owed by Courtney.
¶ 6. In August 1990, Courtney employed an attorney and contacted Powers claiming that he had not received complete payment. He claimed to be owed an additional $21,816.13 which equaled the amount of the retainage. Powers declined further payment, and Courtney filed suit in 1992 naming Glenn and Powers as defendants. The Jones County Circuit Court granted a directed verdict to Glenn because he was not a party to the contract and to Powers because Courtney failed to prove damages. Aggrieved by the court's ruling, Courtney filed this appeal.
 STANDARD OF REVIEW
¶ 7. Our review of motions for directed verdicts is de novo.Little v. Bell, 719 So.2d 757 (¶ 5) (Miss. 1998). In determining whether a directed verdict is proper, the court must look only to the testimony of the plaintiff, consider it to be truthful and give it all favorable inferences that can be drawn therefrom, and if either is sufficient to support a verdict, then the motion for a directed verdict should not be granted. Rucker v. Hopkins, 499 So.2d 766, 770 (Miss. 1986); White v. Thomason, 310 So.2d 914, 916 (Miss. 1975); Ishee v.Peoples Bank, 737 So.2d 1011 (¶ 7) (Miss. Ct. App. 1999).
 I. The lower court erred in granting Roy Glenn's Motion for a Directed Verdict.
¶ 8. Courtney alleges that Glenn tortiously interfered with the performance of his contract with Powers. This interference according to Courtney took several forms, among them (1) not allowing Courtney to work, (2) requiring Courtney to perform work outside the contract, without additional compensation and (3) inaccurate completion of the payment requests.
¶ 9. Tortious interference with a contract is defined as a malicious or intentional interference with a valid and *Page 165 
enforceable contract by a third party which causes one contracting party not to be able to perform and the failure to perform results in a monetary loss for the other contracting party. Cenac v. Murry,609 So.2d 1257, 1268 (Miss. 1992).
¶ 10. To successfully pursue a claim of tortious interference, Courtney must prove (1) that Glenn's acts were intentional and willful; (2) that they were calculated to cause damages to Courtney's business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of Glenn; and 4) that an actual loss occurred. Levens v. Campbell, 733 So.2d 753 (¶ 27) (Miss. 1999). Courtney must also prove that but for the interference the contract would have been performed. Id.
¶ 11. The record indicates that Glenn was project engineer and supervisor, and all actions by him were in that capacity. A person in a position of authority on behalf of another is privileged to interfere with the contract between his principal and another. Shaw v. Burchfield,481 So.2d 247, 255 (Miss. 1985). However, to maintain the privilege he must be acting within the scope of that authority and without bad faith.Id. Therefore any liability by Glenn would be predicated upon the misuse of his position as project supervisor. Glenn visited the site daily, and conferred with the field supervisor and with subcontractors. He determined whether weather or site conditions were conducive for construction. If the site was not suitable, then work would be suspended for the day. Any necessary changes in design were relayed by Glenn to Courtney.
¶ 12. As project supervisor, Glenn had to receive Courtney's payment request on Farmers Home Administration approved forms. The completed form was to be given to Glenn by Courtney. Rather than submitting to Glenn a proper form, Courtney requested payment on scraps of paper. Glenn then used these scraps to complete the proper form for Courtney.
¶ 13. There is no evidence in the record which indicates that Glenn (1) refused to allow Courtney to work, (2) required Courtney to perform unpaid extra contractual work to cause a loss or (3) inaccurately completed payment requests to cause damage or a lose. No evidence was offered which suggested that Glenn improperly used his position as project supervisor to interfere with Courtney's contract. Having reviewed the record, this Court cannot say that the trial judge abused her discretion in granting Glenn a directed verdict.
 II. The trial court erred in granting a directed verdict in favor of Powers Water Association.
¶ 14. Courtney argues that his damages were ascertainable and that the jury should have been given the opportunity to determine his damages. He suggests that the trial court erred by not submitting this matter to the jury. He alleges that this error was compounded when the trial court precluded evidence of any alleged oral modifications of the contract.
¶ 15. Courtney contends his estimates are based on his years of experience and should be enough to prove damages. He relies on Cain v.Mid-South Pump Co., 458 So.2d 1048 (Miss. 1984) as authority. A distinction can be made between Cain and the case at bar. In Cain, the cause of damages was reasonably certain. Id. at 1051. Fifteen pumps were defective and required replacement. Id. Cain provided sufficient evidence to not only prove that damages had occurred but also the amount *Page 166 
of damages he suffered as a result of the defective pumps. Id.
¶ 16. Courtney, on the other hand, did not prove breach of contract or damages. He bid $144,000. He received $178,000. The increased amount over the contract price is the result of contract changes for which Powers compensated Courtney. "[P]laintiffs bear the burden . . . to prove their damages by a preponderance of the evidence." TXG IntrastatePipeline v. Grossnickle, 716 So.2d 991, 1016 (Miss. 1997). Courtney failed to show that he was not compensated for any additional work. Damages cannot be based on mere speculation but must be proved to a reasonable certainty. Wall v. Swilley, 562 So.2d 1252, 1256 (Miss. 1990); Adams v. U.S. Homecrafters, Inc., 744 So.2d 736 (¶ 13) (Miss. 1999).
¶ 17. The contract involved in this dispute was entered into July 1989 and ended March 1990. During that time interval, three written changes and an amendment were made to the original contract. These changes represented design changes as well as adjustments in the contract price for the additional work. Only once during the contract period did Courtney report a pay error. Powers promptly corrected the mistake and paid Courtney the additional funds. No other claim or notice was provided concerning additional pay errors that had occurred during the contract period until several months after the contract was completed. Parole evidence is not admissible to contradict, vary, alter, add to or detract from a writing that is unambiguous and complete on its face absent fraud or mistake. The Great Atlantic and Pacific Tea Co. v. Lackey,397 So.2d 1100, 1102 (Miss. 1981). The trial judge was not in error for refusing to allow parole evidence when the contract was clear, unambiguous and complete. Courtney signed a document for Farmers Home Administration on March 14, 1990, stating that he had received complete payment according to the terms of the contract. The trial court was not in error for failing to consider parole evidence.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY ISAFFIRMED. ALL COSTS ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS,PAYNE, AND THOMAS, JJ., CONCUR.